IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DARRIL HUDSON,

    Plaintiff,

v.

THE DEPARTMENT OF JUSTICE,
DEPARTMENT OF THE ARMY, et al.,

    Defendants.

No. C 04-4079 MJJ

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Before the Court is an action by Plaintiff Darril Hudson under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain all information pertaining to himself and Hans Peter Boesch in the Federal Bureau of Investigation's ("FBI") files. Upon Plaintiff's initial FOIA request, the FBI and the Department of the Army (collectively, "Defendants") released certain documents to Plaintiff. However, based on several FOIA exemptions, Defendants redacted portions of several documents and also withheld some documents in their entirety. Defendants have moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff has filed a cross-motion for summary judgment. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion, and **DENIES** Plaintiff's motion.

**FACTUAL BACKGROUND**

Plaintiff filed a FOIA request with the FBI on September 2, 2000. The request asked for the disclosure of documents relating to an FBI interview and investigation of Plaintiff's then roommate, Mr. Boesch, on April 28, 1986. Plaintiff also requested the disclosure of any FBI information

regarding himself that related to the 1986 interview.

The FBI searched for records responsive to Plaintiff's request and located 45 pages of responsive documents. Of these documents, the first 27 pages pertain to Hudson (file #100-45081), while the remaining 18 pages pertain to Boesch. The FBI reviewed the documents to determine what information could be released to Plaintiff under the FOIA and the Privacy Act, 5 U.S.C. § 552a *et seq*.

The FBI eventually released 24 of the 27 pages in file #100-45081 to Plaintiff, while the three remaining unreleased pages were forwarded to the United States Army for review.[1] Many of the 24 pages released by the FBI were redacted to excise information allegedly covered by FOIA exemptions. The Army released two heavily redacted documents to Plaintiff, and withheld one document in its entirety. The FBI also released to Plaintiff the 18 pages of documents pertaining to Boesch with redactions under two FOIA exemption claims.

The FBI and the Army filed a motion for partial summary judgment covering the 27 pages of documents relating to Hudson, which the Court heard on April 5, 2005. On April 27, 2005, the Court granted the motion as it related to exemption claims for the protection of personal privacy and internal agency rules and practices, but denied the motion as it related to exemption claims to protect national security and confidential information. The FBI and Army have filed the current motion for partial summary judgment to justify the FBI's exemption claims for the 18 pages of documents relating to Boesch, and to correct deficiencies that the Court found in the FBI and Army declarations supporting the first summary judgment motion.

## LEGAL STANDARD

The summary judgment procedure is a method for promptly disposing of actions. *See* FED. R. CIV. P. 56. The judgment sought will be granted if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[A] moving party without the ultimate burden of persuasion at trial [ ] may carry its initial burden of

---

[1] The FBI did not make any of its own redactions to these three pages of documents. The Army ultimately released two of these pages to Plaintiff with redactions and withheld one page in its entirety based on the FOIA's "national security" exemption.

production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant meets its burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim. *See National Wildlife Federation v. United States Forest Service*, 861 F.2d 114 (9th Cir. 1988). The government agency bears the ultimate burden of proving that a particular document falls within one of the nine statutory exceptions to the disclosure requirement. *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994). The government may submit affidavits to satisfy their burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 742) (9th Cir. 1980). The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id*. (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987).

**ANALYSIS**

**A.    Exemption 1: National Security**

Exemption 1 protects from mandatory disclosure under the FOIA matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."[2]  5 U.S.C. § 552(b)(1). The government bears the burden of sustaining its Exemption 1 claims by "provid[ing] . . . information sufficient to determine whether the source was

---

[2]It is undisputed that Executive Order 12,958 governing National Classified Security Information is applicable to this case. The FBI maintains that it has complied with the Executive Order's substantive and procedural requirements for the protection of information affecting national security. The FBI also stated that all of the classified information withheld pursuant to Exemption 1 was over 25 years old, but nevertheless determined that such information had permanent historical value and warranted continued classification at the "Confidential Level," and hence was exempt from automatic disclosure under the Executive Order.

3

a truly confidential one and why disclosure of the withheld information would lead to the exposure of the source." *Wiener v. FBI*, 943 F.2d 972, 980 (9th Cir. 1991).  Furthermore, the government needs to "describe [the] particular withheld document, identify the kind of information found in that document that would expose the confidential sources, or describe the injury to national security that would follow from the disclosure of the confidential source of the particular document." *Id*.  While the government's classification decisions must be afforded "substantial weight," the government will not meet its burden by simply relying "on general assertions that disclosure of certain categories of facts may result in disclosure of the source and disclosure of the source may lead to a variety of consequences detrimental to national security." *Id*.

    **1.**    **Hudson Documents**[3]

In this case, the FBI relied upon Exemption 1 in redacting a significant portion of the document labeled "Hudson 22."  Additionally, the United States Army relies upon Exemption 1 to withhold significant portions of Hudson 24 and 25, and Hudson 26 in its entirety.[4]

    a.    Hudson 22

The FBI states that Hudson 22 is a memo to the Director of the Legal Attache in London and contains information regarding Plaintiff.  (Declaration of Nancy Steward ("Steward Decl.") at 18).[5] The FBI states that it withheld information that identifies the name of one individual of a foreign government's intelligence component who provided information to the FBI.  (Declaration of David M. Hardy ("Hardy Decl.") at ¶7).[6]  The FBI states that in a letter dated February 23, 2001, the

---

[3] FOIA requires agencies to release "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).  With respect to Hudson 21 and 22, Plaintiff argues that the FBI failed to engage in an adequate segregability anaysis.  However, as noted in the Court's previous order, the FBI has satisfied its duty to segregate disclosable portions of the requested documents.  (Steward Decl. at 8:14-17.)

[4] The Army's declaration adequately states that "[a]ll unclassified information has been segregated and released." (Declaration of Susan Butterfield ("Butterfield Decl.") at ¶4.)

[5] Plaintiff objects to portions of the Steward Declaration as not being based upon personal knowledge.  Because the Court is satisfied that the challenged portions of the Steward Declaration were based upon personal knowledge, Plaintiff's objection is **OVERRULED**.

[6] Plaintiff objects to portions of the Hardy Declaration as not being based upon personal knowledge.  Because the Court is satisfied that the challenged portions of the Steward Declaration were based upon personal knowledge, Plaintiff's motion to strike is **OVERRULED**.

4

1  involved foreign government advised the FBI that this information continues to warrant

2  classification at the "Confidential" level despite the passage of time, and that the foreign government

3  has requested that the name of the individual from its intelligence component listed on that particular

4  document remain classified and protected at its original level. *Id*. The FBI notes that "[a] breach of

5  this request can reasonably be expected to strain relations and have a chilling effect of the free flow

6  of vital information between this foreign government and its intelligence components and the United

7  States intelligence and law enforcement agencies, which in turn may substantially reduce the United

8  States' effectiveness." *Id*.

9        The Court finds that Defendants' justifications supporting their withholdings pursuant to

10  Hudson 22 are sufficient under *Wiener*. Specifically, the Court finds that the FBI has established in

11  sufficient detail:  1) how the challenged information would impair the relationship between the

12  United States and a foreign government; 2) the type of harm that could result to national security

13  from disclosure of the information; and 3) how the information falls within the scope of the

14  confidentiality agreement.[7] Accordingly, Defendants' motion for partial summary judgment on

15  Hudson 22 pursuant to Exemption 1 is **GRANTED**.

16        b.      Hudson 24-26

17        The United States Army relies upon Exemption 1 to withhold significant portions of Hudson

18  24 and 25, and Hudson 26 in its entirety. The Army states that these documents contain

19  "information gathered by the U.S. and a foreign government agency" and that "[d]isclosure of the

20  information would reveal intelligence sources and methods still in use today and would damage U.S.

21  relations with a foreign government." (Butterfield Decl. at ¶4.)[8] Thus, the Army concludes that

22  "[t]he information is found to be properly classified CONFIDENTIAL and exempt from

---

[7] Plaintiff argues that the FBI has not shown whether the foreign government's request for confidentiality was made at the time the information was provided or in 2001. The Court finds that it is irrelevant when the confidentiality agreement was formed. The foreign government requested confidentiality in 2001, which shows that the harm to national security would occur now, if the document was released. Furthermore, as noted by the FBI, it is reasonable to assume that if the secrecy of the information is still important to the foreign government in 2001, then it must have been important when the information was generated in 1959.

[8] Plaintiff objects to portions of the Butterfield Declaration as not being based upon personal knowledge. Because the Court is satisfied that the challenged portions of the Steward Declaration were based upon personal knowledge, Plaintiff's objection is **OVERRULED**.

5

disclosure[.]" *Id*.

The Army also notes that the document withheld in its entirely (presumably Hudson 26) contains raw intelligence the release of which would reveal the method used to collect it. *Id*. at ¶5. The Army states that this method of collection is still in use today. *Id*. The Army further states that:

> Release of any information in the document would identify the document and thus no releasable information can be segregated. Pages 1 and 2 [Hudson 24 and 25] of record number 100-45081-7 describe the information to the extent that release of the redacted portions would reveal the identity of the information and thus the method of collection. All unclassified information has been segregated and released.

*Id*.

In response to Defendants' national security contentions, Plaintiff argues that Susan Butterfield, the Army's declarant, is not an original classification authority, as required by Executive Order 12,958, § 1.1(a). Plaintiff also asserts that protecting an intelligence source from being publically identified does not fall within the exemptions of § 3.3(b).

The Court disagrees with Plaintiff's position. As an initial matter, Executive Order 12,958 discusses classification authority, not declassification authority. Susan Butterfield stated that she has authority to review Army documents for declassification, not classification. Thus, the language on which Plaintiff relies does not apply here.

Furthermore, the Court finds that the Army has adequately justified its exemption 1 claim. The Army's declaration explains that the withheld information is "raw intelligence," meaning that it is in the form in which it was collected. If the release of this information would reveal the method of collection, which is still in use today, then the national security concerns flowing from such a decision would be of grave importance. Furthermore, as noted by the Army, releasing this information could allow hostile intelligence agencies to develop countermeasures that would prevent the use of this method of collection. Therefore, because the Army had provided an adequate factual premise upon which the national security exemption is being asserted, the Court **GRANTS** Defendants' motion for partial summary judgment on Hudson 24, 25, and 26.

**2.     Boesch Documents**

The FBI determined that the Boesch documents contain four categories of classified information that were exempt from disclosure for national security reasons: 1) secret file numbers

6

that identify particular intelligence activities or methods;[9] 2) phraseology and terminology that describes specific intelligence activities or methods;[10] 3) characterization of a case that describes the nature of a particular investigation;[11] and 4) designations that identify a foreign counterintelligence squad that targets specific individuals or organizations of national security interest. (Second Hardy Decl. at ¶33). The FBI asserts that this information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4(c).

Plaintiff fails to respond to any of the FBI's specific reasons for redacting national security information in the Boesch documents, and only argues that the FBI did not show that the exempt information was segregable. However, the FBI's declarant, David Hardy, did testify that he reviewed and released all segregable information.[12] (Second Hardy Decl. at ¶28). Therefore, in the absence of any specific challenge by Plaintiff with regard to the FBI's claims under exemption (b)(1), the Court finds that the FBI has met its burden of demonstrating that it applied exemption (b)(1) to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . . ." David Hardy's declaration is as specific as possible regarding the type of information withheld, the applicability of Executive Order 12,958, and the invocation of Exemption 1. Additionally, the Court must afford "substantial weight" to the FBI's declaration, and there is no evidence of agency bad faith and no evidence in the record that contradicts the representations of David Hardy. *See Halperin v. CIA*, 629 F.2d 144, 147-48 (D.C. Cir. 1980). Accordingly, the Court **GRANTS** Defendants' motion for partial summary judgment

---

[9] The FBI states that these file numbers consist of a geographical prefix for the originating office, a case number, a numerical code identifying the type of investigation, and a chronological number assigned to a specific investigation.

[10] The FBI states that this phraseology is still in use today, and if made public, it would reveal the scope and depth of the FBI's investigation of the intelligence matter at issue in the Boesch documents.

[11] The FBI asserts that disclosure of the character of the case could reasonably cause serious damage to national security by disclosing the nature, scope, and thrust of the investigation, and by revealing the manner of acquiring intelligence information.

[12] The Second Hardy Declaration affirms that "any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law." (Second Hardy Decl. at ¶28.)

regarding the portions of the Boesch documents withheld pursuant to Exemption 1.

**B.     Exemption 7(C): Unwarranted Invasion of Personal Privacy**

Exemption 7(C) protects from disclosure "records or information complied for law enforcement purposes" but only to the extent that the production of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  Exemption 7(C) requires courts to balance the privacy interests of the subjects of the requests with the public's interest in disclosure to determine whether the defendant's non-disclosure is proper.  *See Lissner v. U.S. Customs Service*, 241 F.3d 1220, 1223 (9th Cir. 2001).

In Hudson 29-32, 33, 34, and 37-45, the FBI redacted the names of its agents, staff, and of private third parties to protect their privacy pursuant to Exemption 7(C).  The Court has already held that these type of redactions are proper under the FOIA privacy exemption.  (*See* April 27, 2005 Order); *see Edmonds v. FBI*, 272 F. Supp. 2d 35, 46 (D.D.C. 2003).  Plaintiff offers the Court no new law or facts that would justify an alternate ruling.  Accordingly, the Court **GRANTS** Defendants' motion for partial summary judgment regarding the portions of the Boesch documents withheld pursuant to Exemption 7(C).

**C.     Exemption 7(D): Confidential Sources**

Under Exemption 7(D), the FOIA protects from disclosure any records or information complied for law enforcement purposes, but only to the extent that the production of such records or information could reasonably be expected to disclose the identity of a confidential source.  5 U.S.C. § 552(b)(7)(D).  Information provided by a confidential source may also be withheld if it was produced by a criminal law enforcement agency in the course of a criminal investigation.  *Id*.

In the context of express confidentiality agreements, courts have held that government agencies must proffer probative evidence that a claimed source of information received an express promise of confidentiality.  *See Halpern*, 181 F.3d at 298; *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000); *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995).  These cases stand for the proposition that bald assertions that express assurances of confidentiality were given to sources will not satisfy the government's burden under Exemption 7(D).  In *Davin*, the court stated as follows:

8

> Proof of such express assurances may take a number of forms, including declarations from the agents who extended the express grants of confidentiality, contemporaneous documents from the FBI files reflecting the express grants of confidentiality, evidence of a consistent policy of expressly granting confidentiality to certain designated sources during the relevant time period, or other such evidence that comports with the Federal Rules of Evidence.

60 F.3d at 1061; *see also Campbell*, 164 F.3d 20, 34 (D.C. Cir. 1998) (noting that probative evidence of an express grant of confidentiality could "take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources"); *Rosenfield v. Dept. of Justice*, 57 F.3d 803, 814 (9th Cir. 1995) (finding that the district court properly denied protection to several records over claims of express grants of confidence, refusing to treat all symbol numbered sources as protected by express grants of confidentiality).

In Hudson 1, 15, and 16, the FBI redacted the names of two individuals pursuant to Exemption 7(D). (Second Hardy Decl. at ¶18.) Hudson has stated that he does not seek any individuals' names, and therefore the Court finds that these redactions are not at issue in this case. (Declaration of Darril Hudson ("Hudson Decl.") at ¶9.)

The only redactions under Exemption 7(D) that do not involve individual's names are the redaction of a financial institution's name on Hudson 19, the name of a foreign government on Hudson 21 and 22, and the redaction of information on Hudson 15 that would tend to identify a confidential source. (Hardy Decl. at ¶18.) Regarding Hudson 21 and 22, the FBI asserts that it has "an agreement with this confidential government source under which security and/or criminal law enforcement information is exchanged. The agreement specifies the extent of confidentiality requested by the respective foreign authority." (Hardy Decl. at ¶20-21). Furthermore, as previously noted, the FBI states that in a letter dated February 23, 2001, the involved foreign government advised the FBI that this information continues to warrant classification at the "Confidential" level despite the passage of time, and that the foreign government has requested that the name of the individual from its intelligence component listed on that particular document remain classified and protected at its original level. For the same reasons as previously stated, the Court finds that that

9

1  Defendants' justifications supporting their withholdings pursuant to Hudson 22.  Accordingly,
2  Defendants' motion for partial summary judgment on Hudson 21 and 22 pursuant to Exemption 7(D)
3  is **GRANTED**

4     Regarding Hudson 19, the FBI asserts that "this commercial institution provided information
5  under an expressed assurance of confidentiality."  The Court finds that FBI has not provided the
6  Court with any evidence to support its bare assertions of express confidentiality in Hudson 19.[13]  *See*
7  *Halpern*, 181 F.3d at 299 ("[T]he [government] Declaration relies on bare assertions that express
8  assurances were given to the sources in question, and that the information received was treated in a
9  confidential manner during and subsequent to its receipt. Clearly this is insufficient to prove an
10 express grant of confidentiality.")  The Hardy declaration does not assert personal knowledge about
11 the circumstances surrounding the imparting of the information and the record is otherwise devoid of
12 evidence from which an express grant of confidentiality may be reasonable inferred.  Further, the
13 Court cannot discern from the face of the documents that an express grant of confidentiality existed.
14 Therefore, the Court cannot find that an express grant of confidentiality existed between the FBI and
15 the confidential source referenced in Hudson 19, and **DENIES** Defendants' motion for partial
16 summary judgment on this document.  Pursuant to 5 U.S.C. § 552(a)(4)(B), the Court will conduct *in*
17 *camera* review of Hudson 19.

18     Regarding Hudson 15, the FBI asserts that the source was granted an express assurance of
19 confidentiality.  Unlike Hudson 19, this assurance of confidentiality is verified on the fact of the
20 document, by the use of the words "concealed by request."  Because the notation of confidentiality is

---

[13]At oral argument, Defendants contended that the confidential source in Hudson 19 provided information under circumstances from which an assurance of confidentiality was implied.  "The character of the crime and the source's relation to it may support an inference that the source provided information under an implied assurance of confidentiality."  *Billington*, 233 F.3d at 585 (citing *U.S. Dep't of Justice v. Landano*, 508 U.S 165, 179 (1993)).  Here, the extent and precise nature of the FBI's communication with the commercial institution is unclear.  Furthermore, the relationship between the FBI and the commercial institution is also undefined.  Given these considerations, the FBI has not adequately demonstrated that an implied assurance of confidentiality exists.  *See Wiener*, 943 F.2d at 986-87 ("To serve its purpose, the index must state the circumstances surrounding the receipt of information which led the FBI to conclude the informant would not have given the information without an implicit assurance of confidentiality.  Only if the requester has these facts can he intelligently argue no inference of confidentiality was justified; and only if the district court is apprised of these facts can its judgment on the merits be an informed one.").

10

plainly evident from the face of the document, the Court finds that an express grant of confidentiality existed as to the source's name as well as the information the source provided, but only to the extent that the information would identify the individual that requested confidentiality. Accordingly, the Court **GRANTS** Defendants' motion for partial summary judgment on the portion of Hudson 15 withheld pursuant to Exemption 7(D).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion for partial summary judgment with respect to all of the Boesch documents pursuant to Exemption 1 and Exemption 7(C). The Court also **GRANTS** Defendants' motion for partial summary judgment with respect to Hudson 22, 24, 25, and 26 pursuant to Exemption 1, and Hudson 15, 21, and 22 pursuant to Exemption 7(D). The Court **DENIES** Defendants' motion for partial summary judgment with respect to Hudson 19 pursuant to Exemption 7(D). Plaintiff's motion for summary judgment is also **DENIED**.

**IT IS SO ORDERED**.

Dated: July _11_, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE